[Cite as *In re S.D.*, 2013-Ohio-5752.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| S.D. AND C.D., | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| MINOR CHILDREN | |
| | Case Nos. 2013CA0081 and<br>2013CA0082 |
| | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division Case Nos. 2012JCV0066 and 2011JCV0238 |
| JUDGMENT: | 2013CA0081 - Affirmed<br>2013CA0082 - Affirmed |
| DATE OF JUDGMENT ENTRY: | December 23, 2013 |

APPEARANCES:

| For Appellee | For Appellant |
|---|---|
| LISA A. LOUY<br>Stark County DJFS<br>300 Market Avenue North<br>Canton, Ohio 44708 | REGINA M. FRANK<br>Stark County Public Defender<br>201 Cleveland Ave S.W., Suite 104<br>Canton, Ohio 44702 |

*Hoffman, J.*

{¶1} In Stark App. No. 2013 CA 0082, Appellant Candice Daniels ("Mother") appeals the April 12, 2013 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which granted legal custody of her minor child, C.D., to Michelle Riggins upon motion of Appellee Stark County Department of Job and Family Services ("SCDJFS"). In Stark App. No. 2013 CA 0081, Mother appeals the same entry as it relates to her minor child, S.D.

STATEMENT OF THE FACTS AND CASE

{¶2} Mother is the biological mother of C.D. (dob 2/14/11) and S.D. (dob 1/12/12). Mother has three older children, who are not in her custody. The biological fathers of the children are not parties to this appeal.

{¶3} On February 17, 2011, SCDJFS filed a complaint in the Stark County Court of Common Pleas, Family Court Division, alleging C.D. was a dependent and neglected child. The complaint was based upon the fact Mother had a history of mental health concerns as well as a history of psychiatric hospitalizations, dating back to 2004. Following a shelter care hearing, the trial court placed C.D. in the emergency temporary custody of SCDJFS. The trial court appointed a guardian ad litem.

{¶4} The trial court conducted an adjudicatory hearing on May 10, 2011, at which Mother stipulated to a finding of dependency. The trial court found C.D. to be dependent and ordered he be placed in the temporary custody of SCDJFS. Prior to the hearing, C.D. had been moved from a foster care placement into the home of Michelle Riggins, who is somehow related to Mother.

**{¶5}** The trial court conducted a semi-annual review hearing on August 12, 2011. Mother advised the trial court she was pregnant again. The trial court approved and adopted Mother's case plan and maintained the status quo. On December 1, 2011, the parties agreed temporary custody of C.D. should be granted to Michelle Riggins with protective supervision through August 17, 2012.

**{¶6}** Mother gave birth to S.D. on January 12, 2012. The following day, January 13, 2012, SCDJFS filed a complaint alleging S.D. was a dependent and neglected child, and requesting an order of protective supervision. Following an emergency shelter care hearing, the trial court placed S.D. in the emergency temporary custody of SCDJFS. S.D. was placed in the home of Michelle Riggins with C.D. The trial court placed Mother in the Intensive Parent Child Intervention Program (IPCI), a pilot program conducted with Northeast Ohio Behavioral Health.

**{¶7}** Following a review hearing relative to the IPCI program on July 13, 2012, the trial court ordered Mother to seek alternative mental health treatment. On July 17, 2012, SCDJFS filed a motion to extend temporary custody with Riggins and extend protective supervision. The extension was sought because SCDJFS wanted to see more progress with Mother's mental health issues.

**{¶8}** Mother filed a motion for return of legal custody or, in the alternative, motion for Goodwill home-based services and an extension of custody with respect to S.D. on December 10, 2012. On the same day, the trial court conducted a second IPCI review hearing. The trial court scheduled a hearing on Mother's motion. On December 13, 2012, SCDJFS filed a motion to change legal custody of C.D. and S.D. Mother subsequently filed a second motion for home-based services.

{¶9} On January 4, 2013, Huey L. Daniels, Jr., and Patricia Daniels, the children's maternal grandparents ("Maternal Grandparents"), filed a motion to intervene and a motion requesting they be given legal custody. Maternal Grandparents subsequently dismissed their motions. Maternal Grandparents had legal custody of Mother's three older children.

{¶10} The trial court conducted a hearing on SCDJFS' motion to change legal custody as well as all remaining motions on April 10, 2013.

{¶11} Crystal Brown, the on-going family service worker assigned to the case, testified SCDJFS was initially concerned with Mother's untreated mental health issues as well as the fact Mother's other three children had been placed in the legal custody of Maternal Grandparents. Pursuant to her case plan, Mother was required to complete a parenting evaluation at Northeast Ohio Behavioral Health and follow all recommendations; complete a drug and alcohol assessment at Quest; undergo a psychiatric evaluation; and obtain stable housing and employment. Based upon the results of the parenting evaluation, it was recommended Mother participate in Goodwill Parenting, the Substance Abusing Mentally Ill Clients ("SAMI") program, and the IPCI program.

{¶12} Brown discussed Mother's mental health issues. Brown indicated Mother has a history of untreated mental health dating back to 1997. Although Mother had been hospitalized numerous times, had undergone mental health evaluations, been diagnosed, and placed on treatment plans, Mother denied any mental health concerns. Brown acknowledged Mother was receiving some treatment, but could not confirm whether such was appropriate. Brown personally witnessed behavior by Mother which

she considered to be indicative of continued mental health issues. Brown gave examples of Mother becoming very emotional, very erratic, and very loud during visitation when any worker gave her instruction or direction regarding her treatment of the children. Mother became emotionally reactive and the workers were unable to calm her. Mother experienced periods of stability, but subsequently she would become erratic and explosive. Brown expressed concerns about Mother's ability to control her emotions when she was parenting with no supervision. Mother's visits remained supervised and on site at the agency throughout the pendency of the matter.

{¶13} Brown also expressed concerns about Mother's ability to adjust her parenting as the children's needs - physical, emotional, and educational - changed. Brown added at no point during the case did any of the service providers feel Mother was ready to have unsupervised visitation. The underlying concern from all service providers was Mother's denial of any mental health issues. Maternal Grandmother had never seen the children. Maternal Grandfather had visited the children less than half a dozen times.

{¶14} Dr. Aimee Thomas, a licensed psychologist with Northeast Ohio Behavioral Health, testified she conducted an evaluation of Mother on May 17, 2011. Mother completed a personality inventory. Mother's responses suggested she has significant psychological maladjustment, which relates to risk taking behavior, impulsive behaviors, irresponsible behaviors, and problems with alcohol abuse or dependence. Thomas indicated these behaviors raised concerns about Mother's lifestyle choices. The results of the MMPI-2, Minnesota Multiphasic Personality Inventory, revealed Mother has many features of anti-social personality disorder. Mother refused to sign

release of information forms which prevented Thomas from obtaining information relative to her mental health history.

{¶15} During her evaluations with Thomas, Mother admitted to a history of involvement in violent relationships. Mother did not have a stable source of income, relying on friends, selling personal belongings, or collecting cans as a means of financial support. Mother admitted to a problem with alcohol. Mother related stories to Thomas which suggested Mother was experiencing some paranoia and some delusional thinking. Thomas described Mother as emotionally reactive, overreacting to benign situations as she misinterpreted what was occurring. Thomas questioned Mother's ability to maintain self-control and not become abusive when dealing with the children. Thomas diagnosed Mother with anti-social personality disorder, and offered provisional diagnoses of schizophrenia paranoia type, psychotic disorder not otherwise specified, and paranoid personality disorder.

{¶16} Susan Deibel, a counselor with Northeast Ohio Behavior Health, testified she facilitates the IPCI program. The primary goal of the program is to teach the parent the developmental and educational steps in a child's life, and how to provide a nurturing environment in which a child could thrive. Deibel noted it was clear to her Mother had some mental health issues. Deibel stated Mother's mental health issues impacted her ability to benefit from the program. Deibel acknowledged how well Mother participated and interacted with the children. However, she added the appropriateness of Mother's interaction did not override her concern regarding Mother's mental health. Deibel expressed concerns for the safety of the children if Mother was unsupervised.

{¶17} Dwaine Hemphill, the guardian ad litem for the children, explained Maternal Grandparents had filed for legal custody of Mother's second and third child after Mother suffered from a major psychotic break. Maternal Grandparents had legal custody over Mother's oldest child due to a similar situation. Maternal Grandparents reported to Hemphill Mother has had chronic, long term mental illness. Mother had periods of stability, but those periods were punctuated by psychotic breaks. Hemphill had concerns regarding Mother's refusal to provide information regarding her mental health history and hospitalizations. When Hemphill was finally able to obtain Mother's records, he questioned her, but she claimed the records were false. With regard to Maternal Grandparents, Hemphill noted they did not want anything to do with the children until recently. Maternal Grandparents are strangers to the children. Hemphill believes they are motivated by their dislike for Michelle Riggins. Hemphill recommended a change of legal custody, noting it was in the children's best interest. He added the children are thriving in Riggins' care, and it is a loving and bonded home situation.

{¶18} Maternal Grandparents testified on Mother's behalf. Both admitted they did not initially want placement, explaining they felt they could not handle the children for a variety of reasons: the children being babies, Maternal Grandmother's work schedule, Maternal Grandfather's inability to handle the infants, and the busyness of their lives with the three older siblings. They acknowledged they had had little contact with the children since their births.

{¶19} Via Findings of Fact and Conclusions of Law, the trial court granted legal custody of C.D. and S.D. to Michelle Riggins.

**{¶20}** It is from this judgment entry Mother filed her Notices of Appeal.

**{¶21}** In Stark App. No. 2013 CA 0081, Mother assigns the following as error:

**{¶22}** "I. THE TRIAL COURT ERRED IN GRANTING THE CHANGE OF LEGAL CUSTODY FILED BY SCDJFS."

**{¶23}** "II. THE TRIAL COURT ERRED BY DENYING MOTHER'S CHANGE OF LEGAL CUSTODY MOTION."

**{¶24}** "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A FIRST SIX-MONTH EXTENSION."

**{¶25}** In Stark App. No. 2013 CA 0082, Mother raises the following assignments of error:

**{¶26}** "I. THE TRIAL COURT ERRED IN GRANTING THE CHANGE OF LEGAL CUSTODY FILED BY SCDJFS.

**{¶27}** "II. THE TRIAL COURT ERRED BY DENYING MOTHER'S CHANGE OF LEGAL CUSTODY MOTION."

Stark App. No. 2013 CA 0081

I, II

Stark App. No. 2013 CA 0082

I, II

**{¶28}** Because Mother's first and second assignments of error in both cases are related and identical, we shall address them together. In her first assignments of error, Mother argues the trial court erred in granting a change of legal custody. Mother submits she and her children share loving parent-child bonds and the trial court erred in

severing those relationships. In her second assignments of error, Mother contends the trial court erred in denying her motion for change of legal custody.

**{¶29}** We note legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17. Accordingly, Mother may petition the trial court in the future for a modification of custody. *Id.*

**{¶30}** R.C. 2151.353(A) provides, in pertinent part:

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

**{¶31}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible

evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶32}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

**{¶33}** In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No.2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17.

**{¶34}** R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶35}** As set forth in our statement of the facts and case, Mother's mental health issues and her denial of the same remained a major concern to all service providers. Mother visited with the children on a weekly basis. Crystal Brown, the ongoing caseworker, detailed incidents during visitation when Mother became very emotional, very erratic, and very loud when any worker gave her instruction or direction regarding her treatment of the children. Mother would become emotionally reactive and the workers were unable to calm her. Brown expressed concerns about Mother's ability to control her emotions when she was parenting with no supervision. Mother's visits remained supervised and on site at the agency throughout the pendency of the matter.

**{¶36}** A true picture of Mother's mental health history was never discovered as Mother refused to sign release of information forms. The results of testing indicated

Mother had significant maladjustment, engaged in risk taking behaviors, was impulsive and irresponsible, had problems with alcohol dependence, and made poor lifestyle choices. Dr. Thomas diagnosed Mother with anti-social personality disorder as well as provisional diagnoses of schizophrenia paranoia type, psychotic disorder not otherwise specified, and paranoid personality disorder. Dr. Thomas explained Mother was likely to subject herself and the children to violent or high risk situations.

{¶37} The testimony also revealed the children were thriving in their placement. They were loved and were bonded with Michelle Riggins. Based upon the foregoing and the entire record in this matter, we find the trial court's decision is supported by a preponderance of the evidence, and a change of legal custody was in the best interest of the children.

{¶38} With respect to Mother's second assignments of error, we find the trial court did not abuse its discretion in denying Mother's motion for a change of legal custody to Maternal Grandparents. When Maternal Grandparents were initially approached about caring for C.D. and then subsequently S.D., they refused to accept placement. They themselves expressed concerns regarding their ability to care for two infants in addition to Mother's three older children. Also, Maternal Grandparents would not acknowledge the severity of Mother's mental health issues. Further, Maternal Grandparents repeatedly violated the trial court's prior orders with regard to Mother's three older children. They allowed Mother to take the children for unsupervised, overnight visits although such were not permitted.

{¶39} Mother's first and second assignments of error are overruled.

Stark App. No. 2013 CA 0081

III

**{¶40}** In her third assignment of error, Mother asserts the trial court abused its discretion in denying her request for an extension of temporary custody. Mother contends she was diligently working on her case plan and had completed many of the goals and could continue to progress towards reunification within the six-month time period. We disagree.

**{¶41}** A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See, R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See, *In re McNab,* 5th Dist. Nos.2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638.

**{¶42}** Mother's assertion an extension of time would allow her to make continued progress on the case plan is belied by Mother's refusal to acknowledge her mental health issues.  Until she does so, the services she does engage in are not truly effective.

**{¶43}** We find the evidence before the trial court supports the conclusion an extension of temporary custody was not in the children's best interests, but, rather, their interests were best served by award of legal custody to Michelle Riggins.

**{¶44}** Mother's third assignment of error is overruled.

**{¶45}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur

_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                          :
                                           :
S.D.,                                      :
                                           :
MINOR CHILD                                :
                                           :
                                           :
                                           :          JUDGMENT ENTRY
                                           :
                                           :          Case No. 2013CA0081

  For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.  Costs assessed to Appellant.

           _____
           HON. WILLIAM B. HOFFMAN

           _____
           HON. W. SCOTT GWIN

           _____
           HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:              :

:

C.D.,                          :

:

MINOR CHILD             :

:

:

:        JUDGMENT ENTRY

:

:        Case No. 2013CA0082

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to Appellant.

_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY