[Cite as *In re D.H.*, 2021-Ohio-192.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

D.H.

JUDGES:
Hon. Craig R. Baldwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. CT2020-0040

O P I N I O N

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 21930014

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 27, 2021

APPEARANCES:

For Appellant-Mother

ROSE M. FOX
FOX LAW OFFICE
233 Main Street
Zanesville, Ohio  43701

For Appellee Children Services

D. MICHAEL HADDOX
PROSECUTING ATTORNEY
JOHN CONNOR DEVER
ASSISTANT PROSECUTOR
27 North 5th Street
Zanesville, Ohio  43701

*Wise, J.*

{¶ 1}   Appellant-Mother D.B. appeals from the judgment entered in Muskingum County Court of Common Pleas, Juvenile Court Division, which granted legal custody of the minor child D.H. to Scott and Carrie Bunting.

## STATEMENT OF THE FACTS AND CASE

{¶ 2}   This appeal pertains to the award of legal custody of the minor child D.H. (DOB 08/06/2014) of Appellant-Mother D.B. The child's father is listed as unknown.

{¶ 3}   Muskingum County Adult and Child Protective Services ("MCCS") filed a complaint for the removal of D.H. from Appellant D.B. because MCCS received reports of Appellant-Mother experiencing domestic violence, using drugs, and failing to provide medical care to D.H. and his two other siblings.

{¶ 4}   The trial court adjudicated D.H. along with his two siblings neglected and dependent under R.C. Chapter 2151, and during the subsequent dispositional hearing granted temporary custody to Scott and Carrie Bunting under the protective supervision of MCCS.

{¶ 5}   After the dispositional hearing, MCCS provided services specified under a case plan to Appellant-Mother with the goal of attempting reunification with her child D.H.

{¶ 6}   In February, 2020, MCCS filed a motion for legal custody to be granted to Scott and Carrie Bunting with protective supervision terminated. The basis of the motion was Appellant-Mother's failure to make meaningful, substantial progress on her case plan by failing to have completed the specified services despite a year passing and the fact that D.H. was doing well in the temporary custody of Scott and Carrie Bunting.

{¶ 7} In May, 2020, the trial court held a hearing upon that motion and found that it was not in the best interest of D.H. to be returned to Appellant-Mother, that MCCS made reasonable efforts in preventing the removal, and that granting legal custody to Scott and Carrie Bunting with protective supervision terminated was in the best interest of D.H.

{¶ 8} At the hearing, the trial court heard testimony from Caseworker Wendy Swartz, Scott Bunting, Carrie Bunting, the Guardian ad Litem, and Appellant-Mother.

{¶ 9} Caseworker Swartz testified that the child D.H. was placed in the Temporary Custody of Scott and Carrie Bunting on April 18, 2019, where he has remained since.

{¶ 10} She testified that MCCS developed a case plan for Appellant-Mother which addressed her issues with substance abuse, domestic violence, job and housing stability, mental health, and parenting. MCCS provided services to her under the case plan such as domestic violence, mental health, and substance abuse counseling; random drug screens; and help to improve parenting, which she initially started working through. (T. at 6).

{¶ 11} Caseworker Swartz testified that Appellant-Mother completed a hair follicle test on February 2, 2019 which was positive for amphetamine and methamphetamine.

{¶ 12} On March 7, 2019, Appellant-Mother completed an assessment at Muskingum Behavioral Health ("MBH"), at which time MCCS agreed to Appellant-Mother receiving substance abuse treatment, mental health counseling and domestic violence counseling combined, and that the same counselor (Gail Shultice) could provide all of the combined services at MBH as Mother had requested.

{¶ 13} Ms. Swartz stated that any progress Appellant-Mother made on her case plan was short-lived and that in October, 2019, she stopped showing up to her service

provider MBH, which resulted in MBH discharging her for non-participation on November 22, 2019. (T. at 7). Appellant-Mother's explanation for failing to show up to MBH was that she started a new job in October. (T. at 39). However, in early January, 2020, she was laid off and never tried to re-establish services. *Id.*

{¶ 14} At the time of the legal custody hearing in May, 2020, Appellant-Mother had failed to complete any of the services for substance abuse, mental health, parenting, or domestic violence. (T. at 7-8, 49-51). Appellant-Mother claimed that she completed parenting classes at Muskingum Behavioral Health; however she could not provide a certificate of completion. (T. at 49).

{¶ 15} Ms. Swartz further testified that on April 10, 2019, Appellant-Mother signed the drug screening card for MCCS in which she agreed to randomly drug screen for MCCS, and that despite having twenty-one (21) negative screens from April 9, 2019, through August 26, 2019, Appellant-Mother tested positive for amphetamine and methamphetamine on September 3, 2019. Appellant-Mother has not completed a drug screen for MCCS since September 23, 2019, and has no-called/no-showed twenty-five (25) times, which are considered positive tests by MCCS. Further, Caseworker Swartz further testified that there were several reports that Appellant-Mother was altering her drug screens by using different substances in her mouth, such as peroxide and mouth strips.

{¶ 16} Ms. Swartz further testified that the Temporary Custodians Scott and Carrie Bunting held a birthday party for the child in June, 2019, and that the Buntings surprised the child with a visit from Appellant-Mother at that party. However, both Ms. Swartz and

the Buntings testified that several people at the party observed that Appellant-Mother appeared to be intoxicated. (T. at 7).

{¶ 17} Caseworker Wendy Swartz testified that although Appellant-Mother owned her own home, the home was condemned, then un-condemned, then condemned again and was officially foreclosed on in January, 2020. (T. at 8). She stated that Appellant-Mother is currently living with friends, who are reported to be drug users. (T. at 9).

{¶ 18} Ms. Swartz further testified that she had requested numerous times that Mother provide proof of employment, such as copies of pay stubs, after Appellant- Mother reported have full time employment, but that she failed to provide such.

{¶ 19} Both Ms. Swartz and Appellant-Mother testified that Mother had stopped treatment at MBH in October, 2019, and that Mother testified that she stopped treatment due to her work schedule at Fanatics, although the pay stubs submitted by Appellant-Mother provide that Mother did not begin her job at Fanatics until the end of November 2019, and that she was laid off from that job in mid-January 2020. Appellant-Mother has provided no proof of employment income since mid-January 2020;

{¶ 20} Caseworker Swartz again emphasized her concerns that during the fifteen or sixteen months, Appellant-Mother had not made any progress on her case plan, and that she is not engaged in any services at this point in time. (T. at 10).

{¶ 21} Ms. Swartz testified that visitation had been held at the Agency until February, 2020, and that face-to-face visitation had been suspended since March, 2020, due to the Covid-19.

{¶ 22} Ms. Swartz also testified that Appellant-Mother has a history of being involved in domestic violence incidents, in which she at times has been the victim and at

times has been the aggressor, and on July 9, 2019, (during the pendency of this case) Appellant-Mother was charged with Domestic Violence after an altercation with her adult son and his girlfriend.

**{¶ 23}** Appellant-Mother claimed that she did complete parenting services, however she was unable to provide the court with a certificate of completion. (T. at 38, 49). However, she did not dispute that she failed to make substantial progress on the rest of her case plan. (T. at 49-52). Rather, she promised on the stand that she would start drug testing and resume other services. *Id.*

**{¶ 24}** During her testimony, Appellant-Mother admitted that she missed drug screens at the Agency but stated that it was due to her employment at Fanatics where she worked November 22, 2019, through January 17, 2020.  (T. at 39). When asked by the State if she re-established services at MBH in January after she was laid off from her job, Appellant-Mother testified that she did not. (T. at 40).

**{¶ 25}** Both Scott and Carrie Bunting testified that they took D.H. to see Dr. Courtney Huffman due to the child's behaviors upon his returning from any visitation(s) with Appellant-Mother. The Buntings testified that Appellant-Mother would make false promises to the child, and when those promises were not kept, the child would act out. Ms. Huffman's recommendation was to stop visitation with Appellant-Mother. The Buntings further testified that they only want what is best for the child, and that he is a five year old little boy that has gone through a lot.

**{¶ 26}** Carrie Bunting testified that she is usually the one reaching out to Appellant-Mother to set up visits, and that when she realized that the visits were triggering the child's recent bad behavior, she had to do what she felt appropriate to protect the child.

**{¶ 27}** Both Scott and Carrie Bunting acknowledged at the legal custody hearing that they were willing to respect Appellant-Mother's right to reasonable visitation and the other residual parenting rights entitled to her. (T.at 19, 28).

**{¶ 28}** The Guardian ad Litem Michael Connick also gave his recommendation that legal custody of D.H. be granted to Scott and Carrie Bunting. (T. at 59). He expressed concerns about Appellant-Mother's drug use and mental health and urged that any visitation with D.H. be supervised. *Id.*

**{¶ 29}** By Judgment Entry filed June 2, 2020, the trial court found that reasonable efforts had been made by MCCS to prevent the need for placement and removal of D.H. from the home, and that it was in the best interest of the child for legal custody to be granted to Scott and Carrie Bunting and protective supervision to be terminated.

**{¶ 30}** Appellant-Mother now appeals, raising the following assignment of error:

## ASSIGNMENT OF ERROR

**{¶ 31}** "I. THE TRIAL COURT ERRED WHEN IT AWARDED LEGAL CUSTODY AND TERMINATING [SIC] PROTECTIVE SUPERVISION."

I.

**{¶ 32}** In her sole assignment of error, Appellant-Mother argues the trial court erred in awarding legal custody of the minor child to Scott and Carrie Bunting. We disagree.

### STANDARD OF APPELLATE REVIEW

**{¶ 33}** Importantly, the award of temporary custody is "not as drastic a remedy as permanent custody." *In re L.D.,* 10th Dist. No. 12AP–985, 2013–Ohio–3214, ¶ 7. *See also In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9. This is because the award of temporary custody does not divest parents of their residual parental rights, privileges,

and responsibilities. *In re C.R.* at ¶ 17. Therefore, since the granting of temporary custody does not divest a parent of his or her fundamental parental rights, the parent can petition the court for a custody modification in the future. *In re L.D.* at ¶ 7.

**{¶ 34}** "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309, ¶ 13; *In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455 (7th Dist.). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶ 35}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶ 32; In *re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

**{¶ 36}** R.C. §2151.011(B)(21) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities..." In addition, R.C. §2151.011(B)(55) defines "temporary custody" as "legal custody of a child

who is removed from the child's home, which custody may be terminated at any time at the discretion of the court * * *."

{¶ 37} In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No.2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶ 33 .

{¶ 38} R.C. §2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 39} In the case at bar, the trial court found, based on the testimony and evidence presented at the June 2, 2020, hearing, that Appellant-Mother failed to substantially remedy the condition which caused the child to be placed outside the home; that the child was placed in the temporary custody of Scott and Carrie Bunting on April 18, 2019, where he has remained since, that "the child is now in a safe and loving home and that all of basic and extra ordinary needs are being met by Scott and Carrie Bunting and that continuation in this home is in the best interest of the minor child." (JE at 3).

{¶ 40} In support of its decision, the trial court found that Appellant-Mother failed to complete parenting classes, failed to complete substance abuse treatment, failed to complete mental health treatment, and failed to complete domestic violence counseling. (JE at 2-3). The court further found that Appellant-Mother tested positive for amphetamine and methamphetamine on September 3, 2019, and failed to show for twenty-five (25) drug screenings. (JE at 2). The court found that Appellant-Mother has a history of domestic violence and was charged with same during the pendency of this case. *Id*. Additionally, the court found that Appellant-Mother does not have her own housing and has failed to prove that she is employed. *Id*.

{¶ 41} Upon thoroughly reviewing the record, we find that there was competent, credible evidence supporting the trial court's determination that not returning D.H. to the

custody of Appellant-Mother was in the best interest of the child. In light of the trial court's broad discretion in custody determinations, we cannot say that the trial court abused its discretion in granting legal custody of D.H. to Scott and Carrie Bunting.

{¶ 42} The judgment of the Court of Common Pleas, Juvenile Division, Muskingum County, Ohio, is affirmed.


By: Wise, J.

Baldwin, P. J., and

Delaney, J., concur.


JWW/d kw 0126