[Cite as *Carroll v. Huber*, 2022-Ohio-4712.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| LISA CARROLL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022CA00073 |
| LYNN HUBER | : |  |
| CLAUDE HUBER | : |  |
| Appellee | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                             Common Pleas, Family Court Division,
                             Case No. 2021JCV00887

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      December 27, 2022

APPEARANCES:

For-Appellant                        For-Appellee

CHARLES TYLER, SR.                   REBECCA CLARK
137 South Main Street, Ste 206       6 Public Square
Akron, OH 44308                      Medina, OH 44256

*Gwin, P.J.*

{¶1}    Appellant-Mother, L.C. ["Mother"] appeals the May 11, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, granting paternal grandparents, L.H. and C.H. ["Grandparents"][1], Motion for Legal Custody, Motion for Supervised Visitation and Motion for Child Support filed on March 19, 2021 in the Medina County Juvenile Court[2].

*Facts and Procedural History[3]*

{¶2}    Because the parents to this action now reside in Stark County, Ohio, the Medina County, Ohio Juvenile Court transferred venue to Stark County Family Court on September 7, 2021.  The record in this case establishes the following facts.

{¶3}    On April 28, 2021, an evidentiary hearing was held before a magistrate in the Medina County Court of Common Pleas, Juvenile Division, Case Number 2021 03 CV 0007 on the Grandparents Motion for Emergency Ex Parte custody order that Grandparents had filed on March 19, 2021.  See, *Magistrate's Decision, Emergency Temporary Custody,* filed May 21, 2021.  [Hereinafter, "*Magistrate's Decision*].  Mother testified at said hearing as did L.H. and C.H.  After reviewing the evidence presented, the magistrate found,

> The magistrate finds that [A.C.] is six (6) years of age and unable to self-protect.  [Mother] testified that Stark County JFS closed its case, if true, the magistrate finds that it may be in light of the emergency custody order granted to grandparents in this case and not necessarily because it is safe

---

[1] Appellees did not file a brief in this Court.
[2] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.
[3] The facts of this case are taken in part from the Stark County Court of Common Pleas, *Findings of Fact, Conclusions of Law and Decision,* filed May 11, 2022.

for [A.C.] to return home.  Stark County JFS was not called as a witness, and the status of their involvement is unknown to the court as conflicting evidence was presented.

The magistrate considered Stark County JFS' initial safety plan and concerns documented therein, as well as mother's agreement for supervised contact with [A.C.] and no contact order with [D.C., Mother's adult son], who continues to reside in the home.  The magistrate considered that termination of emergency custody orders could result in the child's placement in foster care, or return home, which could place her at imminent risk, and finds that a Guardian ad litem is needed to protect [A.C.]'s best interest and her safety.

The magistrate considered the evidence and testimony and finds that Plaintiffs [L.H. and C.H.], the paternal grandparents of the minor child, are suitable caretakers.  [A.C.] was previously placed in their home for almost a year.  The magistrate finds that an award of temporary emergency custody of the minor child to her paternal grandparents, …  is in her best interests.

IT IS HEREBY DECIDED that [Grandparents] are granted temporary emergency custody of the minor child [A.C.] (DOB: 07/07/2014).

IT IS FURTHER ORDERED that [A.C.] shall have supervised visitation with [Mother].  Visitation shall occur at times and places as decided by the parties.  Visitation shall at all times be supervised by Plaintiff(s).

IT IS FURTHER DECIDED that in observance to the Stark County JFS' safety plan dated March 16, 2021, [A.C.] shall have no contact with [Father, M.H.] or [D.C., Mother's adult son], subject to further order of the court.

* * *

*Magistrate's Decision, Emergency Temporary Custody*, filed May 21, 2021.

{¶4}   On June 2, 2021, Mother filed Objections to the magistrate's decision. On June 3, 2021, Mother filed amended objections to the magistrate's decision.

{¶5}   On June 23, 2021, the trial judge overruled Mother's objections finding, Mother's Objections state that the Magistrate relied upon facts not in evidence, and that the Magistrate shifted the burden of proof to Mother that should have remained with Plaintiff's.

Mother first takes exception to the Magistrate stating that the Motion for Emergency Custody was filed following a domestic violence incident resulting in criminal charges against [Father] that occurred at the home of Defendant on March 16, 2021. (Amended Objections, page 6).

*Judgment Entry and Order,* filed July 23, 2021 at p.3. The trial judge found that Mother's testimony substantiated the domestic violence had occurred and that Father was charged with Disorderly Conduct as a result. Id. The trial judge continued,

Mother further takes issue with Magistrate stating in her Decision that on March 16, 2021, the police and Stark County Job & Family Service responded to the [Mother's] home for a domestic dispute; however [Father] absconded. (Amended Objections, page 7). A further review of the

transcript, at Page 61, finds Mother testified, "Well, unfortunately, he ran and they didn't catch him, you know, so...".

*Judgment Entry and Order,* filed July 23, 2021 at p.4.  The trial judge continued,

Mother's Objections additionally argue that the Magistrate placed the burden upon Mother to show the Voluntary Safety Plan had been terminated, and insist, "The petitioners had the burden of showing that a safety plan exist", as it was not entered as an exhibit and no one from Stark County JFS was called to testify.

The transcript at page 71 shows that Mother admitted to signing the safety plan, and testified at length as to what concerns were voiced by Stark County JFS.  Neither the Plaintiff's nor Mother provided any evidence as to the current status of the Voluntary Safety Plan; all this Court knows is that in March, 2021, a Voluntary Safety Plan was entered into due to concerns judged to be significant enough by that state agency to warrant the removal of A.C.  That the child was removed to a safe location by a voluntary plan or by an emergency court order is of little consequence, as it is often more expeditious to engage a reasonable parent in a voluntary plan than to draft and file an emergency complaint.  The Court is left with the knowledge that the Safety Plan in the recent past existed, proven by testimony of both [paternal grandmother] and [Mother], and no evidence it has been terminated.

*Judgment Entry and Order,* filed July 23, 2021 at p.4-5.  The trial court further noted,

Mother further takes issue with the Magistrate's statement "[Paternal grandmother] testified that [A.C.] has had two prior out-of-home placements involving Cuyahoga Children's Services." Mother testified, at pages 64-65 of the transcript, that in 2015, [A.C.] was subject to two out-of-home placements. ("It was actually two instances. She came back home and -- the two instances together were probably about 18 months.").

*Judgment Entry and Order,* filed July 23, 2021 at p.5. Finding no errors of law or defects in the magistrate's decision, the trial court overruled Mother's objections and adopted the Magistrate's Decision as an Order of the Court. The trial court further held that motions for change of venue to Stark County Family Court should be filed within 14 days of this Judgment Entry, otherwise the matter shall proceed in this court.

{¶6} Mother filed a Motion to transfer venue on July 29, 2021.

{¶7} The Stark County Family Court conducted evidentiary hearings on February 16, 2022 and April 16, 2022 on the grandparents Motion for Legal Custody, Supervised Visitation and Motion for Child Support that was filed on March 19, 2021 in the Medina County Juvenile Court.

{¶8} The primary concerns relative to A.C.'s care and safety are largely the result of drug abuse on the part of both parents. The Mother has been the subject of multiple investigations by Child Protective Services in three counties. This history, according to the Guardian ad Litem began with concerns regarding another child of mother's, D.C., who is now an emancipated adult, investigated by Cuyahoga County, and continued through to the most recent Cuyahoga County case which included D.C., Mother's biological son to another man. He suffers from mental health issues, including Autism.

He is often withdrawn, can be verbally hurtful and continues to use illegal substances. Although he refuses to be drug tested, he lives in the Mother's home.

{¶9} Mother testified that D.C. is currently twenty-one. He lives with her; he cannot live independently. He sees a psychiatrist and therapist. D.C. is on the spectrum and received special schooling with an IEP. He spent eleven months in a mental institution. Upon return, he relapsed and was put in a group home. D.C. has a flat affect according to Mother. D.C. has a medical card for marijuana.

{¶10} Sexual abuse allegations have been ruled unsubstantiated.

{¶11} No records were submitted by either counsel regarding any of the Child Protective Services cases. However, the trial judge found that testimony revealed that a finding of Abuse, Neglect or Dependency must have been made by the Cuyahoga County Court, as A.C., through a safety plan was placed in the relative care, a case plan was adopted and A.C. was eventually returned to the Mother's care. The evidence indicates that the Father failed to complete his case plan and continued to use illegal drugs and failed to address his mental health issues. Cuyahoga County CPS advised the mother to not leave A.C. in the Father or D.C.'s care.

{¶12} Mother testified that Cuyahoga CPS became involved on March 16, 2015 when A.C. was 9 months old. She admitted that she and Father were both using drugs. She admits that A.C. was in substitute care for nine months. A.C. was returned to her but she relapsed three and one-half years later and A.C. was removed again. Eleven months later, A.C. and Mother were reunited. Thereafter, Mother relocated to Canton, Stark County. She owns her own home. She has maintained employment for some time.

{¶13} The trial judge found that after the Cuyahoga County case closed, the Guardian ad Litem reports that Mother, D.C., A.C. and Father were living together. This continued despite the fact that the Medina County Juvenile Court issued no contact orders between the child, her Father and Mother's adult son. During that period of time, the Mother reported that the Father continued to use drugs actively. The Mother admitted to the Guardian that Father never completed services and was only sober for six months after the end of the court case in 2018-19.

{¶14} The trial judge further found that on March 16, 2021, Stark County Child Protective Services (CPS) investigated A.C.'s care and safety. The concerns raised were drug use and that the child was unsafe while being left in the care of D.C. and Father. Eventually, the Mother agreed to a Safety Plan to avoid removal of the child, by placing her again in the paternal grandparent's care. The Guardian ad Litem reports that this was the third removal by CPS. CPS ruled the abuse and neglect allegations were substantiated, according to the Guardian ad Litem's initial report. Thereafter, the paternal grandparents initiated this action for Legal Custody in Medina County, where they reside. This was effectively the third removal of the child from the Mother's home.

{¶15} The trial judge noted that Father testified in this case. He has convictions for Disorderly Conduct and Domestic Violence against Mother. He claims that he started using drugs at age 13 or 14. At the April hearing, he was living in a group home for addicted men. He admitted to relapsing the week prior to trial and was temporarily evicted from the group home. This is his third attempt at drug treatment. The Grandparent's claim that Father is belligerent, violent and a drug addict. Father claims that he is Bi-

Polar, suffers from PTSD due to exposure to domestic violence in the Grandparent's home. (The Grandfather admitted to slapping his wife once).

{¶16} Father claims that he last lived with Mother one year ago and last saw his child one year ago, however the Guardian believes that those claims are untrue based upon his investigation. He reports that Mother evicted Father in January of 2021 due to drug use.

{¶17} L. H. and C. H. are the Paternal Grandparents. They are parents of the child's Father, with whom they are estranged. The Grandparents testified that A.C. has lived with them for three and one-half to four years.

{¶18} Mother has regularly visited with A.C.; visits were supervised by the Grandmother. The trial judge found that although testimony at the initial hearing revealed problems raised between Mother and Grandmother's interactions at the visits, the second hearing testimony indicated that those issues had been resolved and visits went well. Father has not visited due to his continued drug use and failure to complete the recommendations of CPS.

{¶19} The Guardian ad Litem testified that an adult daughter of the Father, T. H., indicated that Mother's home was filthy and in poor condition. This is contrary to the Guardian's initial report that Mother's home was clean. The Guardian ad Litem did not conduct a follow up visit to confirm or refute T.H.'s claims.

{¶20} A.C.'s wishes regarding placement have not been disclosed to the court. No request for an in-camera interview was made.

{¶21} The trial court ruled,

Based upon Father's history of Domestic Violence, on-going drug use, lack of housing or employment, and failure to address his mental health issues, he is found to be unfit to receive custody of [A.C.]

Based upon at least one prior adjudication by a Juvenile Court due to child abuse, neglect or dependency as well as her prior drug use and inability to adequately protect and care for [A.C.] as demonstrated by the evidence, the Court finds Mother to be unfit to receive custody of [A.C.]

{¶22} The trial court concluded,

Having considered all of the factors set forth in O.R.C. 3109.04, the Court finds that the parents of [A.C.] are unfit to receive her custody and that placing her in the Legal Custody of the Grandparents is in her best interests.

{¶23} The trial court held, in part, "[L.H.] and [C.H.] are granted Legal Custody of [A.C.], who was born on July 7, 2014. Plaintiff's Motion for Legal Custody is Granted."

*Assignment of Error*

{¶24} Mother raises one Assignment of Error,

{¶25} "I. THE TRIAL COURT ERRED, WHEN IT GRANTED THE APPELLEES MOTION FOR CUSTODY OF THE MINOR CHILD, WHO ARE NONPARENTS, WITHOUT A DEMONSTRATION BY A PREPONDERANCE OF THE EVIDENCE THAT THE APPELLANT, THE CHILD'S MOTHER IS UNSUITABLE."

*Law and Analysis*

*Failure to File transcript*

**{¶26}** We first must address Mother's failure to present a transcript of the evidentiary hearings held before the trial judge in this case.

**{¶27}** Pursuant to App.R. 9(A)(1), "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." The party appealing has the duty to provide a transcript for appellate review as the appealing party bears the burden of showing error in the underlying proceeding by reference to matters in the record. *Dudley v. Dudley*, 12th Dist. Butler No. CA2013-09-163, 2014-Ohio-3992, ¶ 25, citing App.R. 9(B) and 16(A)(7).

**{¶28}** Though Mother filed a praecipe for a transcript of the February 16, 2022 and the April 26, 2022 hearings on June 3, 2022, there is no indication on the docket that the transcript was ever filed with the court.

**{¶29}** When portions of the transcript necessary for resolution of an assigned error are omitted from the record on appeal, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385(1980); *State v. Williams,* 73 Ohio St.3d 153, 160, 1995-Ohio-275, 652 N.E.2d 721; *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988); *Whaley v. Young*, 12th Dist. Butler No. CA2019-11-189, 2020-Ohio-2981, ¶ 14, *citing Spicer v. Spicer*, 12th Dist. Butler No. CA2005-10-443, 2006-Ohio-2402, ¶ 5; *State v. Ridgway*, 5th Dist. Stark No. 1998CA00147, 1999 WL 100349 (Feb. 1, 1999), *citing Knapp, supra; State v. McGee,* 5th Dist. Muskingum No. CT2019-0063, 2019-Ohio-

4569,¶12; *State v. Durr,* 5th Dist. Richland No. 18 CA 78, 2019-Ohio-807, ¶15; *University Heights v. Johanan*, 8th Dist. Cuyahoga No. 110887, 2022-Ohio-2578, ¶12. Accordingly, given the absence of an appropriate record to support Mother's alleged error regarding the trial court's granting of grandparents' motion for legal custody, we presume the regularity of the proceedings.

{¶30} If such transcript were unavailable, other options were available to Mother in order to supply this Court with a transcript for purposes of review. Specifically, under App.R. 9(C), Mother could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court. Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates Mother did not attempt to avail herself of either App.R. 9(C) or 9(D).

*Legal Custody*

{¶31} The award of legal custody is "not as drastic a remedy as permanent custody." *In re L.D.,* 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214. This is because the award of legal custody does not divest parents of their residual rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

{¶32} Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.,* 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, *citing In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. Id. The Ohio Supreme Court has held that, "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a

child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id.

{¶33} A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159, *citing Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent and credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶34} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752.

{¶35} Issues relating to the credibility of the witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility "is

crucial in a child custody case, where there may be as much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159.

{¶36} Under the circumstances, a transcript of the proceedings is necessary for a complete review of the error alleged in Mother's brief since Mother is challenging the trial court's findings. Here, without a transcript, Mother cannot establish a factual or legal basis that supports her contentions that the trial court erred. In the absence of a transcript, we presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the judge's decision.

{¶37} Mother's sole Assignment of Error is overruled.

{¶38} The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By Gwin, P.J.

Hoffman, J., and

Wise, John, J., concur