[Cite as *In re K.L.V.W.*, 2023-Ohio-1287.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE K.L.V.W.       :

      :      No. 112067

A Minor Child       :

      :

[Appeal by A.W., Mother]       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 20, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20907084

---

### *Appearances:*

Valore & Gordillo LLP, and Dean M. Valore, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant A.W. ("Mother") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting legal custody of her minor child, K.L.V.W., to his father, A.T. ("Father"). Mother argues that the decision of the juvenile court was an abuse of discretion and against the manifest weight of

the evidence. After a thorough review of the applicable law and facts, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶ 2} The Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency") became involved in this matter in August 2020 after a report of domestic violence in Mother's home. A physical altercation had occurred between Mother and R.W., the father of one of her children, T.W. R.W. had punched Mother in the stomach and choked her while she was pregnant with T.W. At the time of the incident, two of Mother's other children, J.W-G. and I.W., were in the home and the incident occurred in their presence. K.L.V.W. was not in the home at the time and was with his paternal grandmother ("Grandmother") and Father.

{¶ 3} The children[1] were removed from Mother's home, and CCDCFS filed a complaint along with a motion seeking emergency custody and temporary custody orders for the children. The complaint alleged that (1) R.W. had assaulted Mother, who was pregnant with T.W., in the presence of J.W-G. and I.W.; (2) Mother and R.W. lacked the judgment and parenting skills needed to provide a safe environment; (3) A.W. did not consistently engage in her mental health treatment; and (4) Father had recently been released from prison and lacked the ability to meet K.L.V.W.'s basic needs.

---

[1] For clarity, we note that J.W-G. and I.G. have different fathers than T.W. and K.L.V.W., who are not parties to this appeal. This appeal only pertains to custody of K.L.V.W. T.W., J.W-G., and I.W. were returned to Mother's care following the juvenile court proceedings.

{¶ 4} Mother and Father entered admissions to an amended complaint, which acknowledged Mother's issues with mental health, parenting, and domestic violence, and outlined Father's criminal history, alleging that he did not yet have the stability to provide for K.L.V.W.'s basic needs. An adjudicatory hearing was held, where K.L.V.W. was adjudged to be neglected and dependent and temporary custody was awarded to Grandmother. Case plans were implemented, and the parties engaged in services.

{¶ 5} After two extensions of temporary custody, the agency moved in July 2022 to modify temporary custody of K.L.V.W. to legal custody to Father and later moved to terminate temporary custody. In August 2022, the court held a trial on the motions.

{¶ 6} At the beginning of the trial, the court noted that both Mother and Father were deemed appropriate by the agency and that since the parties could not agree on a shared parenting plan, the court was going to have to decide between the two based upon the evidence presented at the hearing. Mother's counsel acknowledged that Mother and Father were unable to agree on the terms of a shared parenting plan. The court then proceeded with the hearing.

{¶ 7} The agency presented the testimony of Alyssa Rachid ("Rachid"), an extended services worker. Rachid testified that a case plan had been established for Mother, which included services for domestic violence, parenting, and mental health. With regard to mental health, Rachid testified that Mother had been diagnosed with anxiety, depression, and PTSD. She had completed her goals, and

Rachid had seen positive behavioral changes in Mother. Mother had completed the domestic violence services, and Rachid had no continuing concerns relating to domestic violence. Mother had also completed her parenting classes and engaged in supportive supervised visits with a parenting coach. Rachid testified that she had no concerns with Mother's ability to parent K.L.V.W. At the time of trial, Mother had overnight visitation with the child, and there had not been any issues.

{¶ 8} At the time of trial, Mother was residing with R.W., who is the father of another one of her children. A case plan was also implemented for R.W., which included domestic violence counseling and parenting, and Rachid testified that he had completed all of the services.

{¶ 9} Rachid stated that both Mother and R.W. required parenting services because they were not able to appropriately handle the children, in particular with regard to the outbursts of young children.

{¶ 10} Father's case plan only contained services for basic needs. Rachid had verified Father's employment, which she noted was stable and full time. Father was residing with Grandmother and K.L.V.W. When Father was at work, Grandmother was at home and able to provide care for K.L.V.W. Rachid testified that Father did not have any difficulties in parenting K.L.V.W.

{¶ 11} Rachid testified that Father and K.L.V.W. have a strong, bonded relationship and that K.L.V.W. has a very strong connection with Grandmother. At the time of the trial, K.L.V.W. had been in the custody of Grandmother for approximately two years. Rachid testified that while Father has not obtained his

own housing, she believes that Father and K.L.V.W. residing with Grandmother is actually a positive factor because Grandmother is K.L.V.W.'s caregiver when Father is not around and he is attached to her. Rachid testified that Grandmother had essentially been K.L.V.W.'s primary caregiver since he was around seven months old.

{¶ 12} Rachid testified that while K.L.V.W. was with Grandmother, Mother did not call or speak to him and did not attempt to find out how he was doing in school.

{¶ 13} At the time of trial, K.L.V.W. had completed preschool and would be starting kindergarten in the fall. He had no special education needs. Rachid testified that at the end of the preschool year, the principal of the school had called her to report that K.L.V.W. had had great attendance, no behavioral needs, no issues with his peers, and was achieving above expectations in certain areas.

{¶ 14} Mother resides in the Cleveland Metropolitan School District while K.L.V.W. is currently enrolled in the Elyria School District. Rachid expressed concern that if he were to return to Mother's home, he would have to change schools. She testified that since he was doing so well in school, it would be a concern to "bounce him around," but she also acknowledged that he is young and only going into kindergarten.

{¶ 15} Rachid testified that prior to moving for legal custody to Father, the agency held a staffing to discuss K.L.V.W. She noted that the case plans demonstrate that both parents were appropriate and had done everything asked of them. Since

Mother and Father could not agree on a shared parenting plan, the agency had to choose one parent for custody of K.L.V.W.

{¶ 16} Under cross-examination by Mother's counsel, Rachid noted that Mother has benefitted from the case plan services because she is now able to control her children's behavior, appropriately parent, and does not get frustrated over small issues.

{¶ 17} Rachid testified as to Mother's visitation with K.L.V.W. and her other children. She stated that the visits began supervised, then moved to unsupervised and overnights. Rachid had stopped by several times during overnight visits and observed Mother was able to provide for the basic needs of all of her children and that she seemed bonded with all of them. She stated that she did not have any concerns about Mother supporting the emotional and developmental needs of the children.

{¶ 18} Rachid further testified as to Mother's home, noting that K.L.V.W. had his own bedroom and that the house was safe and appropriate for all of the children.

{¶ 19} Rachid had verified that Mother was employed at a nursing home and was able to meet the financial needs of the children. There was some concern about Mother's work schedule in that she worked overnight hours four days a week and would not be able to handle any issues with K.L.V.W. at night.

{¶ 20} Rachid acknowledged that the agency did not want to remove a child from his siblings, but the parties were unable to agree on a shared parenting plan.

{¶ 21} Rachid testified that K.L.V.W., who was five years old at the time of trial, had been residing with Grandmother since he was approximately seven months old, when Mother had brought him to Grandmother. While Father had only recently moved in with Grandmother and K.L.V.W., prior to this, Father visited with K.L.V.W. every day after work from approximately 4:00 to 9:00 and would help care for him at Grandmother's house.

{¶ 22} Rachid was questioned as to why temporary custody of K.L.V.W. for the nearly two years prior to trial had been given to Grandmother and not Father. Rachid replied that Father had been incarcerated and was on probation. Father had agreed to not reside with Grandmother and K.L.V.W. while he was on probation. Rachid believed his most recent conviction was for aggravated burglary and robbery.

{¶ 23} The guardian ad litem ("GAL") testified as to his report and recommendation. He acknowledged that Mother had completed her case plan, that her home was appropriate, and that K.L.V.W. has a good relationship with his siblings.

{¶ 24} He testified that both homes are appropriate, and both parents are appropriate. He stated that it was frustrating that the parents could not come up with a shared parenting agreement. However, he was in agreement with the agency that legal custody should be awarded to Father, particularly because K.L.V.W. will remain in the home he has been in for most of his life. He stated that he believed his recommendation comports with K.L.V.W.'s wishes because the child would be happy in either home.

**{¶ 25}** The GAL further stated that he believed that K.L.V.W. should have frequent visitation with the other parent and if Father were to be awarded custody, that K.L.V.W. should also be able to see his siblings. He stated that he did not have any reason to believe that Father would not allow that. He acknowledged that Father and Grandmother had facilitated visits with Mother thus far.

**{¶ 26}** Following the trial, the juvenile court awarded legal custody of K.L.V.W. to Father based upon the need for continuity for the child. Mother filed the instant appeal, raising one assignment of error for our review:

> The trial court abused its discretion by awarding legal custody to the child's father.

## II. Law and Analysis

**{¶ 27}** Parents have a constitutionally protected interest in raising their children. *In re M.J.M.,* 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 15, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). That interest, however, is "'always subject to the ultimate welfare of the child.'" *Id.,* quoting *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 7.

**{¶ 28}** Under R.C. 2151.353(A)(3), the court may award legal custody of a child who has been adjudicated abused, neglected, or dependent, to any person who filed a motion requesting legal custody of the child prior to the dispositional hearing. Assuming the person seeking legal custody has complied with any statutory requirements, the court's authority to award legal custody under this statute "is limited only by the best interest of the child." *In re W.A.J.*, 8th Dist. Cuyahoga No.

99813, 2014-Ohio-604, ¶ 3. The best interest of the child is "of paramount concern" when making custody determinations. *In re M.J.M.* at ¶ 14.

{¶ 29} Legal custody is defined as follows:

> [A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21); *In re E.A*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 11.

{¶ 30} Legal custody is significantly different than the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

{¶ 31} Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court

should consider in determining the child's best interest in a motion for legal custody. *In re G.M.* at ¶ 15. We must presume that, in the absence of best interest factors in a legal custody case, "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *Id.* at ¶ 16. Such factors, however, are instructive when making a determination as to the child's best interest. *In re E.A.* at ¶ 13.

{¶ 32} The best interest factors include, inter alia, the interaction of the child with the child's parents, relatives, and caregivers; the custodial history of the child; the child's need for a legally secure permanent placement; and whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home. R.C. 2151.414(D).

{¶ 33} Because custody determinations "'are some of the most difficult and agonizing decisions a trial judge must make,'" a trial judge must have broad discretion in considering all of the evidence. *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, at ¶ 10, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶ 34} An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if there is "'no sound reasoning process that would support that decision.'" *In re C.D.Y.*, 8th Dist.

Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 8, quoting *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made "'without consideration of or regard for facts [or] circumstances.'" *In re C.D.Y.* at ¶ 8, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

{¶ 35} In the case at hand, Mother argues that the juvenile court abused its discretion in awarding legal custody of K.L.V.W. to Father. Mother asserts that she has completely satisfied all of her case plan objectives, as evidenced by the court returning custody of her other three children to her. Mother asserts that Father is prone to violence and has a recent criminal record. She argues that it cannot be in the best interest of a child to be parented by a criminal individual who was previously unable to care for his child because he was incarcerated.[2] Mother notes that it is Grandmother who has provided the appropriate home for K.L.V.W., and Father has leaned on her.

{¶ 36} The agency contends that the trial court had sufficient competent, credible evidence to support its determination that legal custody of K.L.V.W. should be awarded to Father. The agency acknowledges that each parent is appropriate but notes that K.L.V.W. has resided primarily with Father and/or Grandmother since the age of seven months and has been in Grandmother's temporary custody for nearly two years at the time of trial. Moreover, the agency asserts that Mother's work schedule would prohibit her from being present for the child's bedtime routine,

---

[2] While Mother refers to Father's additional criminal charge for assault, we note that there is nothing in the record regarding that charge.

through the night, and for his morning routine at least four days per week. The agency further points to the recommendation of the GAL that Father be awarded custody in the interest of continuity of care for K.L.V.W.

{¶ 37} Given the evidence presented at the hearing, we cannot say that the trial court's determination that it was in the best interest of K.L.V.W. to be placed in the legal custody of Father was arbitrary or unreasonable. The record supports the trial court's findings by a preponderance of the evidence. It is undisputed that both parents had completed their case plans and were appropriate, but one had to be chosen. It is a shame that the parties could not come to an agreement regarding shared parenting, but the trial court was required to choose which parent was in K.L.V.W.'s best interest.

{¶ 38} We find that the juvenile court did not abuse its discretion in awarding legal custody to Father. Mother's sole assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR