[Cite as *In re S.L.*, 2024-Ohio-1989.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE S.L.                                    :

A Minor Child                            :                    No. 113278

[Appeal by B.F., Mother]              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22905411

---

***Appearances:***

John H. Lawson, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee CCDCFS.*

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant B.F. ("mother") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), filed on October 5, 2023, which adopted the magistrate's decision and committed the minor child, S.L. ("the child"), to the legal custody of the child's father, D.L. ("father"), with

protective supervision to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Upon review, we affirm.

{¶ 2} In May 2022, CCDCFS filed a complaint alleging the child was neglected and dependent and requesting temporary custody to CCDCFS. The complaint alleged, among other allegations, that the child had been repeatedly left home alone despite the child's young age, that mother had been charged with child endangering, that mother had failed to ensure that the child consistently attended school, and that mother has mental-health issues and was not currently engaged in services. In November 2022, the juvenile court adjudicated the child to be neglected and dependent and committed the child to the predispositional temporary custody of CCDCFS. The juvenile court provided mother visitation and ordered that mother "is not to leave the jurisdiction of the Court with the child."

{¶ 3} In January 2023, the juvenile court terminated the temporary custody order and committed the child to mother's legal custody with an order of protective supervision to CCDCFS. The juvenile court recognized in part that mother had completed all case-plan services, was engaged in mental-health services, and had voluntarily completed anger-management services. The juvenile court again ordered that "[t]he child is not to be relocated outside of this Court's jurisdiction during the period of Protective Supervision" and further ordered that mother "shall ensure that the child attends all scheduled mental-health appointments."

**{¶ 4}** In April 2023, CCDCFS filed a motion to terminate protective supervision. CCDCFS indicated that mother had been providing proper care for the child and that father had developed a relationship with the child and had been visiting consistently. However, following a video hearing, a magistrate's order was issued that found mother "has not made the child or herself available for an interview with the child's Guardian ad Litem" ("GAL"). The magistrate also noted that mother became "aggressive during the hearing and terminated her involvement prior to the hearing ending." In May 2023, father filed a motion for legal custody.

**{¶ 5}** In June and July 2023, mother failed to appear with the child for an in camera interview scheduled before the court. This led to a warrant being issued for mother to be taken into custody for the proceedings. On July 20, 2023, mother's counsel filed a motion to terminate protective supervision or transfer jurisdiction. It was represented that mother was "residing with the child in the area of Orlando, Florida, and intends to remain there."

**{¶ 6}** A hearing was held on July 20, 2023, at which mother failed to appear. CCDCFS made an oral motion to withdraw its motion to terminate protective supervision, which the juvenile court granted. The hearing proceeded on father's motion for legal custody. Counsel for mother was present and indicated she was prepared to proceed.

**{¶ 7}** Father testified in support of his motion for legal custody. He testified to his ongoing relationship with the child and to his difficulties in maintaining contact with the child because of mother's interference. He testified to his

employment, to his housing, to his family support, to his ability to care for the child, and to other matters. He testified that the child frequently calls asking him to come and get the child and expressing fears toward mother. Father testified that he has not been able to contact the child since mother took the child to Florida. Father also testified to his past convictions for domestic violence with mother and to receiving stolen property. He testified he was not currently on probation and did not have any pending criminal charges. He testified to concerns with mother's behavior and that he has been "avoiding altercation." He also was asked about child-support arrears.

{¶ 8} The CCDCFS case worker testified that she has had contact with mother since she left for Florida. The case worker testified that mother had reported that her home was broken into, that she did not feel safe staying in her apartment, that her car was shot at the weekend before she left for Florida, and that she was going through a victims-of-crime program to get help in Florida. The case worker noted that mother and the child were living in a shelter through that program, that mother's ability to meet the needs of the child could not be verified, and that the child was not enrolled in school in Florida. The case worker testified to her concerns for mother's ability to put all the things in place on her own in Florida to properly care for the child. It was acknowledged that mother was still struggling with anger-management issues.

{¶ 9} The case worker indicated that she had not assessed father because CCDCFS was looking at reunification with mother. The case worker testified that

Father has developed a relationship with the child, that his home is appropriate, and that with his family's support, father would be able to care for the child.

{¶ 10} The child's GAL indicated that he did not believe mother was able to provide the basic needs of the child, was receiving mental-health treatment, or had benefitted from case-plan services. The GAL had interactions with mother and believed that her anger-management issues are very severe and had not yet been curbed. The GAL had spoken with the child, and the GAL indicated that "it is the child's wish to be removed from mother's home and placed in the custody of father." Although father has some issues and did have a 2016 conviction for domestic violence, father had completed probation services. The GAL recommended that father's motion for legal custody of the child be granted. Other testimony was introduced during the hearing, which this court has reviewed.

{¶ 11} The magistrate issued a decision on July 21, 2023, which recommended that the child be committed to the legal custody of father with protective supervision to CCDCFS and that mother have supervised parenting time until further order of the court. Mother filed objections to the magistrate's decision, which the juvenile court overruled. On October 5, 2023, the juvenile court issued a judgment entry that adopted the magistrate's decision upon an independent review of the matter.

{¶ 12} In its judgment entry, the juvenile court considered best-interest factors as well as the GAL's recommendation that legal custody of the child be granted to the child's father. The juvenile court noted that mother had violated two

court orders that prohibited her from relocating outside the court's jurisdiction and had violated a court order for her to ensure that the child be present at the courthouse for an in camera interview. The juvenile court found that mother had not benefitted from anger-management counseling. The juvenile court also found that the child had been receiving counseling services in school, but the child was not enrolled in school in Florida. Additionally, the juvenile court observed that the case plan required mother to provide a stable, safe, and structured home for the child, but mother moved to Florida, has resided with the child in two shelters, and had reported that prior to leaving for Florida, her home had been vandalized and her car and home had been subjected to gunfire. The juvenile court made numerous other findings that were supported by the record, and the court determined that "the child's continued residence with [mother] will be contrary to the child's best interest." The juvenile court found that father has stable and appropriate housing, is employed, and has the support of extended family in caring for the child. The court also noted that the GAL reported that the child desires to reside with father. The juvenile court determined that the child's continued residence with mother will be contrary to the child's best interest and committed the child to the legal custody of father with protective supervision by CCDCFS.

{¶ 13} Mother timely filed a notice of appeal from the juvenile court's judgment.[1] Mother raises three assignments of error for our review.

---

[1] The record also reflects that on October 11, 2023, mother filed a motion to modify custody.

{¶ 14} Under her first assignment of error, mother claims the juvenile court erred by hearing father's motion for legal custody without mother being served with that motion. Her argument is misguided.

{¶ 15} The authority cited by mother in support of her argument is not applicable in this matter. This is not a "private" custody dispute, it is not a domestic-relations case, and it is not a case in which the continuing jurisdiction of the court needed to be invoked.[2] This is a juvenile-court action that was initiated upon the filing of the complaint by CCDCFS and in which the child was adjudicated to be neglected and dependent. The juvenile court was authorized to issue dispositional orders awarding temporary custody or legal custody of the child pursuant to R.C. 2151.353(A). In this matter, the juvenile court committed the child to the predispositional temporary custody of CCDCFS, and thereafter committed the child to the legal custody of mother with an order of protective supervision to CCDCFS. The order of protective supervision required continuing involvement and review by the juvenile court and the children services agency, and the juvenile court retained continuing jurisdiction over the child pursuant to R.C. 2151.353(F)(1). Although CCDCFS filed a motion to terminate protective supervision, it later withdrew its motion. Father was permitted to file a motion requesting legal custody of the child.

{¶ 16} Pursuant to R.C. 2151.353(F)(2), the juvenile court was required to "hold a hearing upon the motion as if the hearing were the original dispositional

_____

[2] *Davis v. Davis*, 8th Dist. Cuyahoga No. 61832, 1992 Ohio App. LEXIS 1074 (Mar. 12, 1992), and its progeny are distinguishable on this basis.

hearing" and to "give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules." The record reflects that service of father's motion was made upon mother's counsel in conformance with Juv.R. 20(B) and Civ.R. 5(B). Mother received adequate notice, and personal service upon mother was not required. *See In re E.H.*, 4th Dist. Hocking No. 21CA6, 2022-Ohio-2417, ¶ 17-23; *In re D.D.*, 9th Dist. Wayne No. 11CA0031, 2012-Ohio-1122, ¶ 5-7. Mother's counsel appeared at the hearing, but mother chose not to appear with her child. The first assignment of error is overruled.

{¶ 17} Under her second assignment of error, mother claims she was denied effective assistance of counsel because of counsel's failure to object to the lack of service on mother when only legal counsel was served. We recognize that this court has not extended the constitutional guarantee of effective assistance of counsel to legal custody proceedings. *See In re C.M.C.*, 8th Dist. Cuyahoga Nos. 109545 and 109546, 2021-Ohio-314, ¶ 28. We need not revisit that issue herein. Even if we were to consider mother's argument, mother's claim of ineffective assistance of counsel fails because she has failed to show that counsel's performance was deficient or that there was any resulting prejudice. The second assignment of error is overruled.

{¶ 18} Under her third assignment of error, mother claims the juvenile court erred by issuing an order without finding a change of circumstances in the child or mother pursuant to R.C. 3109.04(E)(1). That provision does not apply in this matter as argued by mother.

{¶ 19} The juvenile court was to treat the hearing on father's motion for legal custody "as if the hearing were the original dispositional hearing." R.C. 2151.353(F)(2). When a juvenile court considers an award of legal custody following an adjudication of abuse, neglect, or dependency, it does so by examining what would be in "'the best interest of the child'" based on a preponderance of the evidence. *In re J.T.*, 8th Dist. Cuyahoga No. 111642, 2022-Ohio-4747, ¶ 37, quoting *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44; *see also In re JA.B.*, 8th Dist. Cuyahoga Nos. 113056 and 113087, 2024-Ohio-453, ¶ 65. Although R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest upon a motion for legal custody, the factors outlined in R.C. 2151.414(D) are instructive. *In re K.L.V.W.*, 8th Dist. Cuyahoga No. 112067, 2023-Ohio-1287, ¶ 31. Courts have also looked to the best-interest factors set forth in R.C. 3109.04(G). *In re J.T.* at ¶ 40.

{¶ 20} The juvenile court's judgment shows that the court considered the relevant best-interest factors, and the court determined that the child's commitment to the legal custody of father with protective supervision to CCDCFS was in the child's best interest. The record reflects that mother relocated with the child to Florida, was residing in a shelter with the child, did not have family support in Florida, and was still struggling with anger-management issues. There were other valid concerns relating to mother's ability to provide a stable, safe, and structured home for the child. The record further reflects that father was employed, had an adequate home, and had family support with providing care for the child.

Additionally, the child wished to be placed with father and the GAL recommended that legal custody of the child be granted to father. Other evidence was presented and reviewed by the juvenile court. After careful consideration of the entire record, we find the juvenile court's determination is supported by a preponderance of the evidence.

{¶ 21} Additionally, we recognize that the juvenile court included a finding that the child's continued residence with mother would be contrary to the child's best interest and that "[p]ursuant to R.C. 2151.42, * * * based on the facts that have arisen since the last order of the Court was issued or that were unknown to the Court at the time, that a change has occurred in the circumstances of the child, the child's parents, or the child's legal custodian/guardian, and that modification or termination of the order is necessary to serve the best interests of the child." Given the record before us, we find that the juvenile court did not err by stating that a change of circumstances for the minor child or the child's parents had occurred. The third assignment of error is overruled.

{¶ 22} The juvenile court reasonably concluded that legal custody to father with protective supervision by CCDCFS was in the child's best interest. We are not persuaded by any other argument presented.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR