[Cite as *In re N.B.*, 2025-Ohio-1833.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE N.B.                                           :

Minor Child                                          :                    No. 114398

[Appeal by B.B., Father]                             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 22, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-21907811

---

***Appearances:***

Law Office of Victor O. Chukwudelunzu, LLC, and Victor
Chukwudelunzu, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

SEAN C. GALLAGHER, P.J.:

{¶ 1} Appellant B.B. ("father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that committed his child N.B. ("the child") to the legal custody of the nonrelative

caregiver with whom the child had been placed. Upon review, we affirm the decision of the juvenile court.

{¶ 2} On September 3, 2021, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint for neglect and dependency and sought temporary custody of the child, who was then approximately six months old, to CCDCFS. Among other allegations, the complaint alleged that the child's mother ("mother") has another child who was placed in the permanent custody of CCDCFS due in part to mother's substance abuse; that mother has substance-abuse issues with cocaine and alcohol that interfere with her ability to provide appropriate care for the child; that father minimizes mother's substance abuse; that father has his own substance-abuse issues that interfere with his ability to provide appropriate care for the child; and that father has a criminal record. The juvenile court committed the child to the predispositional temporary custody of CCDCFS. The child was placed with the same nonrelative caregiver who had adopted the child's sibling. The child remained in this placement throughout the pendency of the proceedings.

{¶ 3} In January 2022, the child was adjudicated to be a dependent child. Following a dispositional hearing, the child was committed to the temporary custody of CCDCFS. During the course of the proceedings, two extensions of temporary custody were granted. Case-plan services were developed and provided.

{¶ 4} Although CCDCFS sought to modify temporary custody to permanent custody, in July 2024 CCDCFS filed a motion that instead sought legal custody to

the child's caregiver. Also, the child's guardian ad litem ("GAL") filed a motion for permanent custody to CCDCFS, and father filed a motion for legal custody to himself.

{¶ 5} A dispositional hearing was held on the pending motions on July 30, 2024. The juvenile court heard testimony and accepted evidence in the matter. Among other evidence, the record shows that mother failed to complete her case plan, and her lack of sobriety remained a significant concern, with her "drug of choice" being cocaine. Mother was unsuccessfully discharged from Women's Recovery Center after having relapsed in May or June 2023, and she refused to engage in further treatment. Father's criminal history included a conviction for attempted aggravated robbery, as well as charges against him in 2022. Father was not always cooperative with the agency, though he eventually began to comply with drug testing, disclosed having a medical marijuana card, and completed an assessment. His marijuana use, which was described as "chronic or excessive," was not the crux of the agency's concern. Father was accused of being dishonest with an assessor, and there were concerns about his honesty with the agency. The agency had suspicions of a continuing relationship between father and mother, as supported by circumstantial evidence, and a concern that the child would be in the unsupervised care of mother, who had no sobriety date. The record shows that the parents had a plan to "co-parent" the child, that supervised visitation with both parents together had regularly occurred, and that the child is bonded with both parents. The child also was well bonded with the caregiver and with the child's

sibling, and the child had been in the same placement for nearly three years. Even though the sibling had been adopted by the caregiver, the caregiver maintained a relationship and communication with mother. This was the reason the agency was asking for legal custody instead of permanent custody of the child.

{¶ 6} The GAL recommended permanent custody as being in the child's best interest but did not object to the caregiver having legal custody. The GAL indicated that the child had been in the same placement for almost three years and was "very integrated in the home" with the caregiver and the child's sibling. The GAL recognized that the child also was bonded with both mother and father, but stated, "It's like visiting family members. It's not the same when [the child is] with her [foster] mom. . . . [O]bviously [the child has] been there and that's her home." The GAL also expressed concern that from her observations, "mother is the hands-on person" at visits, and father trusts her to take care of the child, but mother has a "very long history of substance abuse."

{¶ 7} Other testimony and evidence were provided that this court has thoroughly reviewed. The juvenile court issued a decision on August 30, 2024, in which it granted CCDCFS's motion and committed the child to the legal custody of the child's caregiver. Father timely appealed.

{¶ 8} Father raises three assignments of error under which he claims (1) the juvenile court's decision denying his motion for legal custody while awarding legal custody to an interested individual is against the manifest weight of the evidence; (2) the juvenile court violated his fundamental liberty interest in the care, custody,

and management of his child; and (3) the GAL's report, testimony, and recommendation should have been excluded because the GAL failed to perform her duties in accordance with Sup.R. 48.03(D). We are not persuaded by father's arguments in this matter.

{¶ 9} First, father challenges the juvenile court's decision as being against the manifest weight of the evidence. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 10} In this matter, the juvenile court was to treat the hearing on CCDCFS's motion for legal custody "as if the hearing were the original dispositional hearing." R.C. 2151.353(F)(2). "When a juvenile court considers an award of legal custody following an adjudication of abuse, neglect, or dependency, it does so by examining what would be in 'the best interest of the child' based on a preponderance of the evidence." (Cleaned up.) *In re S.L.*, 2024-Ohio-1989, ¶ 19 (8th Dist.). "Preponderance of the evidence" means "evidence that's more probable, more persuasive, or of greater probative value." (Cleaned up.) *In re Y.F.*, 2024-Ohio-5605, ¶ 31 (8th Dist.). "Although R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest upon a motion for legal custody, the factors outlined in R.C. 2151.414(D) are instructive." *In re S.L.* at ¶ 19,

citing *In re K.L.V.W.*, 2023-Ohio-1287, ¶ 31 (8th Dist.). "Legal custody is significantly different from the termination of parental rights — despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities." *In re Y.F.*, R.C. 2151.353(A)(3)(c).

{¶ 11} Here, the juvenile court's decision shows that the court considered the relevant factors in determining the child's best interest. Among other factors, the juvenile court considered the significance of mother's substance-abuse problem, father's lack of cooperation with the agency through much of the case, issues surrounding father's lack of candor about his criminal history and marijuana use during his drug assessments, the agency's "genuine concern" with father's honesty, the parents' expressed intent to co-parent together, and the concern that mother would be an unsupervised caregiver. The juvenile court also considered the child's relationship with the parents, the caregiver, and the child's sibling. Though the child was bonded with both parents and with the caregiver, the juvenile court recognized the child was placed with a sibling and the siblings are very bonded, the child was in the same continuous placement for three years and was doing well in that placement, the child calls the caregiver "mom," and the caregiver is willing to have legal custody of the child. The juvenile court considered the ongoing "relationship between the mother and the caregiver," the "sheer amount of time the child has been in custody" of the caregiver, and the child's need for a legally secure placement. The juvenile court also recognized that "the GAL does not recommend reunification with the father and does recommend legal custody for the child." Ultimately, the juvenile

court found that the child's commitment to the legal custody of the child's caregiver is "in the child's best interest."

{¶ 12} We find the juvenile court engaged in the proper analysis and reasonably concluded that legal custody to the child's caregiver is in the child's best interest, as supported by a preponderance of the evidence. Although father points to evidence favorable to him and argues his alleged relationship with mother was unproven by CCDCFS, the juvenile court was permitted to consider all material and relevant evidence in rendering its disposition. After carefully reviewing the entire record, we do not find the juvenile court clearly lost its way or committed a manifest miscarriage of justice by granting the agency's motion and committing the child to the legal custody of the child's caregiver. The juvenile court's decision is not against the manifest weight of the evidence.

{¶ 13} Next, though father claims the juvenile court violated his fundamental right to parent his child, it is well established that the government has broad authority to intervene to protect a child's health or safety. *See In re C.F.*, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Therefore, "Juvenile courts are afforded broad discretion in fashioning a disposition following the adjudication of a child as being abused, neglected, or dependent, because the courts are charged with protecting the best interests of children." *In re*

*R.G.M.*, 2024-Ohio-2737, ¶ 16, citing R.C. 2151.353(A).  Upon our review of the record in this matter, we find the juvenile court acted in accordance with the best interest and ultimate welfare of the child.

{¶ 14} Finally, we find no reversible error occurred with respect to the admission of the GAL's report and recommendation.  Though father claims Sup.R. 48.03(D) was not strictly adhered to, as this court has previously recognized, the rule "provides * * * good guidelines for the conduct of a guardian ad litem . . . . However, the Rules of Superintendence are only general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law." (Cleaned up.)  *In re L.W.*, 2019-Ohio-1343, ¶ 49 (8th Dist.).  Therefore, generally, "a guardian ad litem's failure to comply with Sup.R. 48 is not, in and of itself, grounds for reversal of a custody determination."  *Id.*, citing *In re C.O.*, 2013-Ohio-5239, ¶ 14 (8th Dist.).  "Likewise, courts have latitude when following their own local rules . . . ." *In re K.R.*, 2023-Ohio-466, ¶ 64 (8th Dist.).  Furthermore, because father failed to object to the GAL's report and recommendation below, he has forfeited all but plain error.  In civil cases, the plain-error doctrine "is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously effects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging

the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 15} Father argues that although the GAL spoke with the caseworker and with the caregiver, the GAL only had short interactions with father at court, never went to father's residence, and did not conduct in-person visits with the child at the foster home. However, the record reflects that the GAL would not have changed her recommendation. As stated by the GAL, she had seen the patterns and history, had seen the child with her parents and with the foster family, had read all the agency notes, and had met with the caseworker. The GAL's investigation was not so deficient as to constitute plain error or to warrant reversal of the juvenile court's legal-custody decision.

{¶ 16} We are not persuaded by any other argument presented. The assignments of error are overruled.

{¶ 17} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

DEENA R. CALABRESE, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)